IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-60509
Summary Calendar
_____


FLITELINE MAINTENANCE; EUGENE E. SHANKS; CARL RAMIREZ,

Petitioners,

versus

DAVID R. HINSON, Administrator of the Federal Aviation
Administration,

Respondent.

_____

Petition for Review of an Order of the
Federal Aviation Administration
(94-ANE-10)
_____

March 14, 1996

Before KING, SMITH, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:[*]

     Petitioners Fliteline Maintenance, Eugene E. Shanks (Shanks),

and Carl Ramirez (Ramirez) petition for review of the final order

of the Federal Aviation Administration ("FAA") adopting a new

airworthiness directive ("AD") for turboprop and turboshaft engines

repaired, assembled, or modified by Petitioners.  Finding

substantial evidence to support the FAA's ruling, we deny the

petition for review.

BACKGROUND

_____

     [*]  Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

On May 14, 1992 an Ayres S2R-600 aircraft with a modified turboprop engine maintained by Fliteline Maintenance crashed during takeoff, killing the pilot. After investigating the crash, the FAA determined that the engine installed on the aircraft was neither approved for installation on the aircraft nor properly installed on the aircraft. The FAA then extended its investigation to other aircraft engines repaired or maintained by Fliteline Maintenance and Shanks.

The FAA's investigation revealed that: 1) Shanks, the owner of Fliteline Maintenance, had falsified engine logbooks to show compliance with other ADs; 2) Shanks had falsified records for certain life-limited turbine components to show more useful life than the components actually had remaining; 3) unapproved parts were installed on the engines; 4) modifications had been performed on the engines without approved data; and 5) records maintained by Fliteline Maintenance on the engines it repaired, assembled, or modified did not identify all of the suspect engine models and serial numbers. The results of the investigation led to Shank's criminal indictment. Shanks pled guilty to two counts of making false statements in a matter within the jurisdiction of the FAA in violation of 18 U.S.C. 1001.

On August 5, 1994, the FAA issued a Notice of Proposed Rulemaking to amend part 39 of the Federal Aviation Regulations to include a new AD applicable to certain turboprop and turboshaft engines manufactured by AlliedSignal. The proposed AD required operators of these engines to perform a check of engine records to

determine if any repair, assembly, or modification work was performed by Fliteline Maintenance, Shanks, or Ramirez. Any engines determined to have been worked on by Fliteline Maintenance, Shanks or Ramirez were then to be verified that the life-limited components had not been in service longer that the time listed in the engine maintenance records, and all affected parts were to be inspected. The FAA suspected that at least 500 engines were worked on by Petitioners.

The FAA received and considered numerous comments on the proposed AD, including many submitted by Petitioners. On August 4, 1995 the FAA issued its Final Rule on the AD[1], which incorporated several of the suggestion made by the commentaries. Petitioners subsequently filed a motion to stay the effective date of the AD, which this Court denied. The AD became effective on September 5, 1995.

ANALYSIS

"Appellate review of an agency's decision is circumscribed. We may consider only whether the agency's findings and conclusions were 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law' or 'unsupported by substantial evidence.'" *Miranda v. National Transportation Safety Board*, 866 F.2d 805, 807 (5th Cir. 1989) (quoting 5 U.S.C. § 706(2)(A) and (E)).

Petitioners contend that the FAA failed to develop any credible evidence that would meet the substantial evidence standard

---

[1] The final version of the AD is published in 60 FR 39842.

3

in this case. Specifically, they argue that the FAA's version of the record is incomplete, avoids exculpatory material, and fails to attribute a product failure to Petitioners.[2] Petitioners further argue that the basis for the AD was prompted by a flawed investigation, resulting in a factually inadequate AD that constitutes an improper response to a problem only involving ordinary maintenance. Finally, Petitioners argue that the FAA failed to follow the procedures of both the FAA and the Administrative Procedures Act ("APA") by not taking into consideration Petitioners' late-filed comments to the proposed AD, and breached its settlement agreement with Fliteline Maintenance and Shanks by issuing the AD.

Our review of the record indicates substantial evidence to support the FAA's AD. The FAA's investigation revealed that an unsafe condition existed in numerous AlliedSignal engines that were repaired, modified, or assembled by Petitioners, requiring the FAA to issue the AD in order to inspect, identify, and verify the affected engine parts in certain turboprop and turboshaft engines. This evidence overwhelmingly supports the issuance of the AD, irrespective of whether or not the crash of the Ayres S2R-600 aircraft in 1992 can be attributed to the modifications made to that particular engine by Petitioners.

In addition, we find that the AD was enacted to identify and remedy improperly modified and maintained engines that posed a

---

[2] Petitioners have filed a motion to supplement the certified list and a motion for production of documents in this appeal.

4

direct air safety hazard constituting more than an ordinary maintenance problem. Furthermore, we find that the FAA both accepted and considered Petitioners' comments in compliance with APA and FAA procedures prior to issuing the final version of the AD, and that the AD was not issued in violation of Petitioners' settlement agreement because nothing in the settlement agreement limited the FAA's AD rulemaking authority in this matter.

CONCLUSION

Finding substantial evidence in the record to support the FAA's ruling, the petition for review is DENIED. Furthermore, Petitioners' motions to supplement the certified list and for production of documents are DENIED.